UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>LESLIE REDD III,<br><br>Defendant. | NO. CR21-037 RSM<br><br>INFORMATION |

The United States Attorney charges that:

### COUNT 1

**(Conspiracy to Commit Wire Fraud)**

1. Beginning at a time unknown, but no later than in or about October 2018, and continuing through in or after December 2018, at Anacortes, within the Western District of Washington, and elsewhere, LESLIE REDD III, and others known and unknown, did knowingly and willfully combine, conspire, confederate and agree together to commit the offense of Wire Fraud, in violation of Title 18, United States Code, Section 1343.

**A.  Background**

2. At all relevant times, Victim-1 was a limited liability company based in Washington State and headquartered in the Western District of Washington. Victim-1 manufactured engines for ferries, among other products.

3. Victim-2 was a corporation based in Washington State and headquartered in the Western District of Washington. Victim-2 contracted with government agencies to manufacture and deliver ferries for commercial and other uses. Victim 2 purchased engines for those ferries from Victim-1.

4. Government Agency-1 was a regional public transit agency tasked with operating and expanding ferry service in a major metropolitan area in the United States.

5. LESLIE REDD III ("REDD") was a resident of California.

6. CO-CONSPIRATOR 1 was a resident of Pennsylvania.

**B.  Object of the Conspiracy**

7. The object of the conspiracy was to send emails in interstate and foreign commerce posing as Victim-1, in order to defraud Victim-2 out of $3,316,730 that Victim-2 intended to pay to Victim-1 in consideration for ferry engines.

**C.  Manner and Means of the Conspiracy**

8. The manner and means used to accomplish the conspiracy included the following:

    a. It was part of the conspiracy that the co-conspirators gained unauthorized access to Victim-1's computer network by transmitting a malicious hyperlink in an electronic communication to users of that network, including Victim-1's employees. Upon gaining unauthorized access to Victim-1's computer network, the members of the conspiracy searched Victim-1's credit manager's email account for, among other things, invoices issued by Victim-1 to Victim-2.

    b. It was part of the conspiracy that, upon gaining unauthorized access to Victim-1's credit manager's email account, the members of the conspiracy manipulated the credit manager's email settings to delete and/or redirect to members of

the conspiracy any emails that the credit manager received from Victim-2's employees' email accounts.

  c. It was part of the conspiracy that, upon gaining unauthorized access to Victim-1's credit manager's email account, the members of the conspiracy sent emails from the compromised email account to Victim-2, in which they posed as Victim-1's credit manager.  The recipients of the fraudulent emails included Victim-2's Chief Financial Officer.

  d. It was part of the conspiracy that the fraudulent emails to Victim-2's Chief Financial Officer instructed Victim-2 to wire amounts that it owed Victim-1 to a bank account to which Victim-2 had not previously made payment.  The fraudulent emails claimed falsely that the bank account to which Victim-2 previously had made payments to Victim-1 was unavailable as a result of a fictitious purported "audit."  In truth and in fact, the new bank account did not belong to Victim-2, but instead had been registered by CO-CONSPIRATOR 1.

  e. It was part of the conspiracy that, in order to defraud Victim-2 into believing that the new email account to which the fraudulent emails referred was legitimate, REDD directed CO-CONSPIRATOR 1 to register a corporate entity that bore the same name as Victim-1 in the State of Pennsylvania.

  f. It was part of the conspiracy that REDD emailed CO-CONSPIRATOR 1 invoices that the members of the conspiracy had stolen from Victim-1's protected computer network, which set forth the amounts owed by Victim-2 to Victim-1, which totaled $3,316,730.

  g. It was part of the conspiracy that, after Victim-2 was defrauded into wiring $3,316,730 to the bank account registered by CO-CONSPIRATOR 1, CO-CONSPIRATOR 1 wired $3,074,500 to two bank accounts controlled by REDD.

  h. It was part of the conspiracy that, after Victim-2 was defrauded into wiring $3,316,730 to the bank account registered by CO-CONSPIRATOR 1, CO-

CONSPIRATOR 1 issued checks to REDD and an entity controlled by REDD, totaling $120,000.

   i. It was part of the conspiracy to register an email account with an address that resembled Victim-2's Chief Financial Officer's actual email address.  It was further part of the conspiracy to use that fictitious email address to send emails to Victim-1, in which the members of the conspiracy posed as Victim-2's Chief Financial Officer and claimed falsely that Victim-2 was unable timely to pay Victim-1 as a result of Government Agency-1's purported failure timely to pay Victim-2.  The conspirators did this in order to lull Victim-1, so that Victim-1 would not demand payment from Victim-2, and thereby alert Victim-2 to the fraud, before the fraud was complete.

  All in violation of Title 18, United States Code, Section 1349.

## COUNT 2

### (Wire Fraud)

  9. The allegations set forth in Paragraphs 1 through 8 of this Information are re-alleged and incorporated as if fully set forth herein.

  **A.** **Scheme And Artifice To Defraud**

  10. Beginning at a time unknown, but no later than in or about October 2018, and continuing through on or after December 2018, at Anacortes, within the Western District of Washington, and elsewhere, LESLIE REDD III, and others known and unknown, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

  11. The essence of the scheme and artifice to defraud was to defraud Victim-2, based in the Western District of Washington, and elsewhere, out of $3,316,730, which Victim-2 intended to pay Victim-1 in consideration for ferry engines that Victim-1 sold to Victim-2.

### B. Manner And Means Of Scheme To Defraud

12. The manner and means of the scheme and artifice to defraud are set forth in Paragraph 8 of this Information.

### C. Execution Of Scheme To Defraud

13. On or about October 22, 2018, at Anacortes, within the Western District of Washington, and elsewhere, LESLIE REDD III, and others known and unknown to the Grand Jury, having devised a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme, by means of wire communication in interstate and foreign commerce, that is, an email from outside the State of Washington, to Victim-2, at Anacortes, in the State of Washington.

It is further alleged that this offense was committed during and in furtherance of the conspiracy charged in Count 1, above.

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

The allegations contained in Counts 1 and 2 of this Information are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture. Upon conviction of an offense of Conspiracy to Commit Wire Fraud, as alleged in Count 1, or Wire Fraud, as alleged in Count 2, the defendant LESLIE REDD III shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981 (a)(1)(C), by way of Title 28 United States Code, Section 2461(c), any property that constitutes or is traceable to proceeds of the offense. This property includes, but is not limited to, a sum of money representing the proceeds the defendant obtained from the offense.

### (Substitute Assets)

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

| | | |
|---|---|---|
| 1 | a. | cannot be located upon the exercise of due diligence; |
| 2 | b. | has been transferred or sold to, or deposited with, a third party; |
| 3 | c. | has been placed beyond the jurisdiction of the Court; |
| 4 | d. | has been substantially diminished in value; or |
| 5 | e. | has been commingled with other property which cannot be subdivided without difficulty; |

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek the forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

DATED this 22ND day of February, 2021.

*Sarah G. Vogel, for*
BRIAN T. MORAN

ANDREW C. FRIEDMAN
Assistant United States Attorney